# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 13-CR-338 |
| RONALD DRUMMOND<br>a/k/a "Sammy" | : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

**I.  Introduction**

RONALD DRUMMOND, a/k/a "Sammy," was a member of and drug distributor for the SERRANO-HERRERA drug trafficking organization and sold large quantities of heroin. He is charged with a conspiracy to distribute approximately 2.3 kilograms of heroin, possession with the intent to distribute 100 grams or more of heroin, possession of a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a convicted felon. He has a lengthy criminal record with two prior armed robbery convictions. If convicted, he could face a maximum of life in prison with a 15 year mandatory minimum. Consequently, there is a presumption that the defendant poses a risk of flight and that he is a danger to the community. Because no condition or combination of conditions will reasonably the appearance of the defendant at trial or assure the safety of the community, the government moves pursuant to 18 U.S.C. § 3142 for pretrial detention of the defendant.

## II. Discussion

### A. Overview

In the summer of 2012, the Pennsylvania Attorney General Office and their Bureau of Narcotics Investigation (BNI) agents used classic investigative techniques to successfully build a very solid criminal case against a group of drug traffickers, headed by JESUS MARIA SERRANO-HERRERA, who were distributing large amounts of heroin in Philadelphia and the surrounding area. Many of these drug traffickers were from the Dominican Republic which appeared to be the ultimate source of supply for the heroin. BNI built this case initially through the use of a confidential informant who made a number of controlled payments for previously purchased heroin in July and August 2012. Based upon this evidence, BNI sought and received state court authorization to wiretap the phones of several of the targets. The targets, speaking almost exclusively Spanish on the phones, showed relatively poor phone discipline and fairly openly discussed their drug trafficking activities. By listening to SERRANO's phone, they identified that his main re-distributors were SIDIQ SHAHEE MONTGOMERY, TAMIKA ROBERTS, ALEXIS RODRIGUEZ, and RONALD DRUMMOND. The wiretap proved fruitful in a very short period of time. This evidence allowed BNI to obtain search warrants on a number of locations that the organization used to distribute heroin. On September 6, 2012, BNI seized a total of 1050 grams of heroin spread over five different locations. In total, the evidence shows that this organization distributed about 2.3 kilograms of heroin over a few week period from the end of July 2012 to September 6, 2012, and a substantially larger amount over the preceding months.

### B. Drummond

DRUMMOND was one of the larger re-distributors for the SERRANO organization. DRUMMOND, who apparently does not speak Spanish, dealt with SERRANO, who apparently does not speak English well, through GARCIA, who acted as a translator. During the course of the BNI investigation, DRUMMOND, GARCIA, and SERRANO were intercepted on numerous occasions discussing drug deals between DRUMMOND and the SERRANO organization. These wiretaps were corroborated by BNI investigators observed DRUMMOND meet with members of the SERRANO-HERRERA organization to distribute heroin. On September 6, 2012, BNI executed a search warrant at DRUMMOND's home and seized 235.42 grams of heroin packaged into 8,352 packets, two handguns, and over $5000 in drug proceeds.

On August 26, 2012, at 4:35 p.m., GARCIA called SERRANO to discuss the distribution of heroin. GARCIA stated that "Sammy" (DRUMMOND) wanted to return "140" bundles of heroin because the quality was poor. GARCIA stated that DRUMMOND owed "13" ($13,000) but he was only going to pay "10" ($10,000) and return the rest of the heroin. GARCIA noted that DRUMMOND averred that no one wanted to buy the poor quality heroin. GARCIA related that DRUMMOND wanted them to change the "stamp" or brand on the next shipment heroin - implying that a new stamp would make it easier to sell. GARCIA noted that DRUMMOND wanted "650" bundles and he wanted the 140 bundles replaced with better quality heroin for a total of "790" bundles of heroin.

On August 27, 2012, at 11:27 a.m., SERRANO called GARCIA to discuss a drug transaction. GARCIA asked if SERRANO had the "100" bundles of heroin ready for an

unidentified customer. GARCIA reminded SERRANO that DRUMMOND wanted a new "name" on his next shipment of heroin.

On August 28, 2012, at 12:48 p.m., SERRANO called GARCIA to discuss a shipment of heroin to DRUMMOND and MONTGOMERY. SERRANO asked GARCIA which stamp would MONTGOMERY's heroin contain. GARCIA responded that DRUMMOND would get "Lucky Charms" but that he could not remember which stamp MONTGOMERY would get.

On August 28, 2012, at 5:39 p.m., SERRANO called GARCIA and told him that he would bring "five" [bundles of heroin] to DRUMMOND and MONTGOMERY, presumably so they could test the quality of the heroin.

On August 28, 2012, at 5:42 p.m., GARCIA called SERRANO and told him that MONTGOMERY said "just give his 5 [bundles of heroin] to Sammy [DRUMMOND]."

On August 29, 2012, at 10:42 p.m., SERRANO called GARCIA to discuss their drug trafficking business. GARCIA explained to SERRANO that DRUMMOND and MONTGOMERY were still having problems selling the "old" heroin because of its poor quality. GARCIA stated that their redistributors cannot sell the heroin unless the quality improves. GARCIA reminded SERRANO that DRUMMOND wanted 750 bundles and return the 100 bundles of poor quality heroin. GARCIA further stated that MONTGOMERY wanted 100 bundles of heroin and an unidentified customer wanted a sample of heroin. SERRANO instructed GARCIA to call their customers and tell them that he has some new heroin.

On August 29, 2012, at 9:47 p.m., GARCIA conducted a three-way call with SERRANO and DRUMMOND. GARCIA told SERRANO that DRUMMOND wanted to know when he

would be "ready" to deliver the next shipment of heroin. SERRANO stated that he could have "200" [bundles of heroin] ready by tomorrow.

On August 30, 2012, at 10:56 a.m., GARCIA called SERRANO to discuss the shipment of heroin to DRUMMOND. SERRANO explained that there was a problem with DRUMMOND's shipment because they had to package MONTGOMERY's shipment first. SERRANO stated that MONTGOMERY's shipment would be ready around 2:00 p.m. but that DRUMMOND's shipment of heroin would not be ready until 7:00 p.m. that evening. At 1:23 p.m., SERRANO texted PEDRO ARIAS, "How many is there for Sammy [DRUMMOND]?" At 1:25 p.m., PEDRO ARIAS texted back, "Almost 100 [bundles of heroin]." At 1:28 p.m., PEDRO ARIAS texted SERRANO, "with yesterday's and today's, only 200 [bundles of heroin]." At 1:29 p.m., SERRANO called PEDRO ARIAS and instructed him to "give me a time so I can send El Negro [DOMINGUEZ]" his courier to pick up the packaged heroin.

Later that afternoon, at 3:39 p.m., SERRANO called PEDRO ARIAS to inquire about the status of the packaging of the heroin and stated, "I told you to call me when you are ready, how many is there?" ARIAS replied, 'There are 2 [200 bundles packaged] there and a few more." SERRANO indicated to ARIAS that he would call his courier to pick up the packaged drugs by stating, "Let me call Negro [DOMINGUEZ]." SERRANO then called DOMINGUEZ and instructed him, "Go over to Picu's [PEDRO ARIAS] and call him when you get there, and when you are ready let me know so I can call Tio [GARCIA] so he can call Sammy [DRUMMOND]." At 3:41 p.m., SERRANO called GARCIA and told him, "He's [DOMINGUEZ] leaving in about 15 minutes, same place, at the McDonalds." GARCIA replied, "Same place, McDonalds, he'll [DRUMMOND] be there in like a half hour." At 3:45, DOMINGUEZ called SERRANO and

asked him, "Where am I going?" SERRANO replied that DOMINGUEZ was supposed to meet with "Sammy" [DRUMMOND]. SERRANO instructed DOMINGUEZ to call GARCIA to make arrangements with him. At 4:39 p.m. SERRANO called PEDRO ARIAS to inquire, "Did Negro [DOMINGUEZ] leave yet?" ARIAS replied, "Yes, he left."

Around 5:18 p.m. that afternoon, BNI investigators observed DRUMMOND meet with SERRANO's courier, MODESTO DOMINGUEZ, in the Walmart parking lot on Columbus Avenue. The agents observed DOMINGUEZ hand DRUMMOND an unidentified object which, based upon the phone calls intercepted that day, presumably contained heroin which had been bundled earlier in the day.

At 8:03 p.m. that evening, SERRANO and GARCIA tabulate the DRUMMOND account. GARCIA told SERRANO, "You know that Sammy [DRUMMOND] return $100.00 for the food [100 bundles of old heroin] and he [DRUMMOND] gave him [DOMINGUEZ] $3.00 so he owes you $1.00 [$1,000] and you owe him $100.00 [100 bundles of heroin]."

The next day, on August 31, 2012, at 6:45 a.m., PEDRO ARIAS texted SERRANO "a question Samy 800 or 850" - meaning should ARIAS prepare 800 or 850 bundles of heroin for DRUMMOND. At 7:11 a.m., SERRANO replied that ARIAS should prepare "750" bundles of heroin for DRUMMOND.

At 7:15 a.m., SERRANO called GARCIA to continue the accounting for the DRUMMOND. GARCIA told SERRANO that DRUMMOND gave "100 back" [100 bundles of heroin] to be replaced and wanted 650 more bundles for a total of "750" bundles. However, GARCIA explained that he only has 550 bundles of heroin to give to DRUMMOND. SERRANO explained that they gave him "200" bundles of heroin already. SERRANO

instructed GARCIA to call DRUMMOND and let him know that "the guys are making it" [packaging the heroin]. SERRANO explained that his packagers made a mistake in that they were supposed to make 200 for "Sidiq" [MONTGOMERY] but SERRANO told that it was for DRUMMOND not MONTGOMERY. SERRANO stated that the packagers are now making "1000" bundles for DRUMMOND. GARCIA then told SERRANO that DRUMMOND does not want 1000 bundles. SERRANO explained that he would take the loss for the extra ones. GARCIA stated that he could give the extras to other customers if needed. SERRANO opined that MONTGOMERY and DRUMMOND will get "greedy" and want more heroin soon.

At 8:42 a.m., SERRANO called GARCIA to tell him that MONTGOMERY wanted "550" bundles of heroin. SERRANO explained that DRUMMOND also wanted 550 bundles of heroin since they gave him 200 bundles yesterday. GARCIA reiterated that SERRANO should not worry about extra bundles of heroin that the packagers make because he will find customers for it.

At 8:49 a.m., PEDRO ARIAS called SERRANO to tell him that DRUMMOND's 550 bundles of heroin would be ready at 1:00 p.m. SERRANO instructed ARIAS to start packaging the bundles for MONTGOMERY. However, ARIAS stated that there was no more "people" [bulk heroin] available. SERRANO expressed surprise at that statement and exclaimed that he gave ARIAS "300 pesos" [grams of heroin]. ARIAS related that he only saw "241" [grams of heroin]. SERRANO stated that he bought "400 dollars" [400 grams of heroin] which came in two packages, "3 and 1" - meaning one packaged contained 300 grams of heroin and one packaged contained 100 grams.

At 5:23 p.m., GARCIA called SERRANO who told GARCIA to tell DRUMMOND that he should go back to the McDonalds - meaning his order was ready. At 5:24 p.m., SERRANO called DOMINGUEZ and told him, "Sammy's [DRUMMOND], go over to Picu [PEDRO ARIAS] and call Tio [GARCIA] to make the arrangement." Around 6:19 p.m., BNI investigators observed DOMINGUEZ meet with DRUMMOND in the Walmart parking lot on Columbus Avenue near the McDonalds. The investigators observed DOMINGUEZ hand DRUMMOND a brown bag. DRUMMOND then drove home to 2841 Sheridan Street and took the bag inside his home.

On September 6, 2012, BNI investigators executed a search warrant at the home of RONALD DRUMMOND, located at 2841 S. Sheridan Street, Philadelphia, PA. DRUMMOND lived at this house with his wife, children, and another older woman. He was the only adult male residing in the home. DRUMMOND was one of the larger redistributors in the SERRANO organization. During the search of this home, BNI found two handguns in a closet located in his bedroom. One firearm was a Sig Sauer semi-automatic pistol, model number P226, with an obliterated serial number, loaded with one live round in the chamber. Nearby, they found a magazine with 14 live rounds. The second firearm was a Smith and Wesson semi-automatic pistol, model number Springfield SW40VE, serial number DVV9937. They found three magazines loaded with live rounds. In the same room, located in a hamper or plastic container of some sort, they found 235.42 grams of heroin packaged into 8,352 packets. The container was about 6 feet away from the guns. In the home, the investigators also found approximately $5,306 in cash. The Pennsylvania State Police laboratory confirmed that the powder was in fact heroin. Some of the heroin was found in the same front second floor bedroom as the two firearms and

some was recovered from inside the refrigerator in the first floor kitchen. BNI further found some drug distribution items, including a scale. Finally, they found some paperwork showing indicia of occupancy for DRUMMOND who was present at home during the search.

**B.     Maximum Penalties**

DRUMMOND is charged in a four count indictment with: (1) conspiracy to distribute one kilogram or more of heroin, (2) possession with the intent to distribute 100 grams or more of heroin, (3) possession of a firearm in furtherance of a drug trafficking offense, (4) possession of a firearm by a convicted felon. Based upon his prior criminal record, DRUMMOND faces a mandatory minimum term of 15 years imprisonment and, if convicted of count 1, a maximum sentence of life in prison.

**C.     Criminal Record**

DRUMMOND has a lengthy criminal record. In 1987, he was convicted for unauthorized use of a motor vehicle and sentenced to 1 year of probation. In 1988, he was convicted for possession of a controlled substance and given 1 year probation. In 1989, he was convicted of criminal conspiracy and robbery and sentenced to 5 to 15 years in prison. In 1998, he was convicted of conspiracy and robbery and sentenced to 6 to 15 years in prison. At the time of the offense conduct, he was on supervised release for this offense.

**D.     Lack of Community Ties**

At the time of his arrest, DRUMMOND did not have lawful employment. He has used multiple aliases in the past, including Ronald Summers and Sam Drummond.

## III. **CONCLUSION**

DRUMMOND is a significant heroin trafficking with history of violent criminal history. He could faces a 15 year mandatory minimum sentence if convicted of these charges. There is a presumption that he is a risk of flight and a danger to the community. All of these factors support the presumption that he should be detained pending trial.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


/s/
ROBERT J. LIVERMORE
Assistant United States Attorney


/s/
KATHERINE CORBETT GIBSON
Special Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| v. | : | 13-CR-338 |
| RONALD DRUMMOND | : | |

## PRETRIAL DETENTION ORDER

AND NOW, this      day of September 2013, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated 21 U.S.C. §§ 841 and 846 and 18 U.S.C. §§ 922(g) and 924(c).

2. The evidence in this case is strong. The investigators recorded numerous phone conversations in which DRUMMOND discussed heroin deals, watched him as he picked

up heroin from his suppliers, and ultimately seized 235.42 grams of heroin packaged into 8,352 packets, two handguns, and over $5000 in drug proceeds in the defendant's home.

3. The total maximum statutory penalty defendant faces is life in prison and, given his prior robbery convictions, the defendant faces a 15 year mandatory minimum sentence. Accordingly, the defendant has a substantial incentive to flee.

4. The defendant has a lengthy criminal record.

5. As there is probable cause to believe that the defendant committed an offense punishable by 10 or more years in jail under the Controlled Substances Act, the Court must presume--subject to rebuttal by the defendant--that no condition of release, or combination of conditions, will reasonably assure the safety of any person and the community or reasonably assure the appearance of the defendant as required. The defendant has failed to rebut this presumption.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a Court of the United States, or on request of an attorney for the government, the person in charge

of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

_____
HONORABLE DAVID R. STRAWBRIDGE
United States Magistrate Judge

CERTIFICATE OF SERVICE

        I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed Order was served on the following defense counsel:

Jack McMahon, Esq.
Counsel to Ronald Drummond

                                        /s/
                                ROBERT J. LIVERMORE
                                Assistant United States Attorney

Date:   September 10, 2013